**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Donato Garcia MALDONADO, Defendant–Appellant.**

**No. 94–60243.**

United States Court of Appeals, Fifth Circuit.

Jan. 6, 1995.

---

Jose Luis Ramos, McAllen, TX, for appellant.

Paula C. Offenhauser, Jim Powers, Asst. U.S. Attys., Gaynelle Griffin Jones, U.S. Atty., Houston, TX, for appellee.

Appeal from the United States District Court for the Southern District of Texas.

Before WHITE, Associate Justice (Ret.),[1] BARKSDALE and PARKER, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Donato Garcia Maldonado's principal claim is that, pursuant to *Minnesota v. Dickerson*, — U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), seizure of heroin from his boot was outside the lawful scope of a pat-down for weapons pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); but, we must address first whether the issue was raised in district court. Finding that it was not, we review only for plain error. Also at issue is the denial of a sentencing reduction for acceptance of responsibility. We AFFIRM.

I.

Maldonado, while driving a pickup truck, was stopped on August 24, 1993, for speeding by Officers Perez and Ruiz of the Duval County (Texas) Sheriff's Department. When

---

1. Associate Justice of the United States Supreme Court (Ret.), sitting by designation.

Officer Ruiz inquired about the truck's ownership, Maldonado would not answer. Suspecting that the truck had been stolen, Officer Ruiz attempted a license check while Officer Perez watched Maldonado.

Maldonado appeared nervous and backed away from Officer Perez. Because of fear for his safety, Officer Perez stayed with Maldonado. He noticed a bulge in the right front pocket of Maldonado's trousers, and, suspecting a weapon, asked for permission to pat Maldonado down, even though Maldonado had stated he had money in his pocket. Maldonado consented, and the bulge proved to be money.[2] But, based on Maldonado's continuing nervous behavior, which caused Officer Perez to continue to fear for his safety, Officer Perez conducted a full pat-down and discovered a bulge on one of Maldonado's boots. Again suspecting a weapon, Officer Perez reached into the boot and removed a rounded, duct-taped package.[3]

Upon removal, Officer Perez was of the opinion that the package contained drugs, and, with the help of Officer Ruiz, handcuffed Maldonado and placed him under arrest. Officer Perez then made a small incision in the package and discovered a black, sticky substance. Subsequent testing revealed the substance to be 43.8 grams of heroin.

Maldonado was charged with possession of heroin with intent to distribute. After the district judge refused to allow a conditional plea of guilty (preserving the suppression claim as to the heroin removed from Maldonado's boot), Maldonado waived his right to a jury trial. The suppression motion was included in the bench trial and was denied. The district judge found Maldonado guilty as charged. At sentencing, the court denied Maldonado an acceptance of responsibility

reduction, and sentenced him, *inter alia,* to 40 months imprisonment.

## II.

Maldonado challenges the denials of the suppression motion and the acceptance of responsibility request.

### A.

The findings of fact on the motion to suppress are reviewed only for clear error, with the record being viewed in the light most favorable to the government (prevailing party).[4] *E.g., United States v. Michelletti,* 13 F.3d 838, 841 (5th Cir.) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 102, 130 L.Ed.2d 50 (1994); *United States v. Ponce,* 8 F.3d 989, 995 (5th Cir.1993); *United States v. Rideau,* 969 F.2d 1572, 1576 (5th Cir.1992) (en banc). The district court's legal conclusions are reviewed *de novo. E.g., Michelletti,* 13 F.3d at 841; *United States v. Johnson,* 932 F.2d 1068, 1069 (5th Cir.1991).

### 1.

Maldonado claims that the seizure of the heroin was outside the lawful boundaries of a *Terry* search. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court held that the Fourth Amendment permits an investigatory stop of an individual when a police officer, based on articulable facts, has a reasonable suspicion that the individual is involved in criminal activity. *Id.* at 19, 88 S.Ct. at 1878; *Michelletti,* 13 F.3d at 841. That stop may include "a reasonable search [of the individual] for weapons ... where [the officer] has reason to believe that he is dealing with an armed and dangerous

---

**2.** When Officer Perez felt the bulge in Maldonado's pocket, he no longer suspected a weapon, and asked Maldonado to remove the contents voluntarily. Maldonado complied and removed a bundle of currency.

**3.** The package was approximately two and one-half inches by two inches by two inches. The only indicia of its size are photographs placed in evidence by the government. They show the package next to United States currency recovered from Maldonado. One dimension of the package appears to approximately equal the width of the currency. We take judicial notice

that this is approximately two and one-half inches. From this scale, we approximate the package's other dimensions.

**4.** "A finding is clearly erroneous when, although some evidence supports the decision, we are 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Tello,* 9 F.3d 1119, 1122 (5th Cir.1993) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

individual." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *Michelletti*, 13 F.3d at 840; *Rideau*, 969 F.2d at 1575.

Maldonado does not dispute that the officers were justified in conducting a *Terry* search. Rather, relying upon *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), he maintains that the seizure of the package from his boot exceeded the lawful scope of the search; that although Officer Perez was entitled to pat down the outside of Maldonado's boot, he was not permitted to reach inside and retrieve the package.

The Court addressed in *Dickerson* when contraband is seized lawfully under a *Terry* search. It held that if, during a *Terry* weapons search, a police officer "feels an object whose contour or mass makes its identity [as contraband] immediately apparent", its seizure is lawful. *Dickerson*, —— U.S. at ——, 113 S.Ct. at 2137. As *Dickerson* reaffirmed, the purpose of a *Terry* search is to eliminate the threat of violence to an investigating officer, and is therefore "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Dickerson*, —— U.S. at ——, 113 S.Ct. at 2136 (quoting *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882).

■ In *Dickerson*, a police officer conducting a *Terry* search detected a small lump in the detainee's jacket pocket. —— U.S. at ——, 113 S.Ct. at 2133. The officer knew that the lump was not a weapon; upon further manipulating it with his fingers, he suspected it was crack cocaine. *Id.* at ——, 113 S.Ct. at 2138. But, because the officer had already concluded that the lump was not a weapon, the search had already ceased to be for the lawful purpose of checking for weapons. The Court held that the object could have been seized lawfully only if its identity as contraband was immediately apparent

while the officer was still searching for a weapon. *Id.* at ——, 113 S.Ct. at 2137. Restated, so long as an officer is investigating an object that reasonably may be a weapon, the *Terry* search may continue.[5]

Officer Perez testified that he patted down Maldonado's boots because detainees "have sometimes concealed weapons in" them. When he noticed the bulge on one boot, he asked Maldonado "if it was a knife, a gun, a grenade or something." Our inquiry is whether Officer Perez could have believed reasonably that the item concealed in Maldonado's boot was a weapon (*Dickerson* issue).[6] Here, the *Dickerson* issue has two components: after detecting the bulge on Maldonado's boot, was Officer Perez justified in reaching into it; and, if so, was he justified in removing the object? Guiding our analysis is the rule that

[i]n assessing the reasonableness of an officer's actions, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action was appropriate?".

*Rideau*, 969 F.2d at 1574 (quoting *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880) (citations omitted).

■ But, first, we must determine whether the *Dickerson* issue was raised in district court; if not, we review only for plain error. *E.g.*, *United States v. Calverley*, 37 F.3d 160 (5th Cir.1994) (en banc). As hereinafter demonstrated in necessary, considerable (and perhaps numbing) detail, the *Dickerson* issue was not presented in district court. Instead, the issue pressed there was whether, after removal of the package, it provided probable cause for the subsequent actions taken by

---

5. As the Eighth Circuit recognized, in applying the "immediately apparent" standard to the facts in *Dickerson*, the Supreme Court "emphasized that the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—*a pocket which the officer already knew contained no weapon*'". *United States v. Hughes*, 15 F.3d 798, 802 (8th Cir.1994)

(quoting *Dickerson*, —— U.S. at ——, 113 S.Ct. at 2138) (emphasis added).

6. Obviously, consistent with Officer Perez's testimony, the government does not contend that Officer Perez thought, in the alternative, that the bulge he felt on the outside of the boot resulted from contraband concealed in it.

the officers.[7] At no stage of the suppression process was *Dickerson* ever cited to the district court, even though it was decided approximately three and one-half months before the motion to suppress was filed, and approximately five months before the hearing.

In his motion to suppress, Maldonado sought, among other things, suppression of "illegal contraband". The motion provided only very general statements in support, asserting in part that "contraband found on" Maldonado was "the product of an illegal stop, arrest, search and seizure."

At the hearing, in orally presenting reasons for suppression, prior to the testimony, Maldonado presented three bases: first, that Maldonado had not been speeding; second, that the pat-down was without consent; and third, "that there was no probable cause to open the package" found in the boot. For the third reason, Maldonado's lawyer stated:

> But assuming that the Court rules in both of those instances [speeding and consent to pat-down] in favor of the Government, in the continued search [Officer Perez] finds a package in [Maldonado's] boot. Now, there is no probable cause to open that package, you know. So that would be the third element, that after they found it then they opened [it] without smell, without anything, and that there was no probable cause to open the package. *Just the fact that he had a package in his boot I feel was insufficient in and of itself to open that package. And that was obviously not a weapon.*

(Emphasis added.)

It is possible that the comments in italics can be read to bump up against the *Dickerson* issue. But, even assuming that Maldonado's lawyer was raising it, these comments did not present the issue to the district court

with sufficient specificity. The comments could just as easily—and properly—be understood to refer to action taken post-removal (in the words of Maldonado's lawyer, "after they found it [the package]"), and not to challenge the removal at all. This is apparent from the testimony adduced subsequently; it fails likewise to identify the issue.

On questioning by the government, Officer Perez stated why he reached inside the boot; the bulge he felt on the outside of the boot caused him to suspect a weapon was concealed inside. But, he was not asked if, when he reached inside and made contact with the package, he made a simultaneous determination then (it was "immediately apparent") that it was either a weapon or contraband. Nor was he asked, in the alternative, whether he decided then that the item was not a weapon (the lawful *Terry* search would then end), but on further feel or manipulation of the item, decided that it was contraband. Instead, in describing the steps he took, Officer Perez stated that in conducting the pat-down

> I also told [Maldonado] to stand firm because I was going to check down towards his boots because they have sometimes concealed weapons in their boots. I patted outside and I felt a bulge in his right boot, and then I told him that I was going to reach in there to see what it was. I asked him if it was a knife, a gun, a grenade or something, because we never know what it could be. *I reached in there and I pulled out a packet, duct-taped colored round package.*

(Emphasis added.) In short, it appears that Officer Perez reached in and removed the package in one continuous motion.[8]

The closest the testimony comes to the *Dickerson* issue is on cross-examination of Officer Perez by Maldonado's lawyer:

---

**7.** Conversely, the probable cause issue is not presented here. Except for possible reference to it in the table of contents to Maldonado's brief ("Is duct tape, of and by itself, sufficient probable cause?"), there is no discussion of this issue in the brief. Accordingly, we do not consider it. *E.g., Zuccarello v. Exxon Corp.,* 756 F.2d 402, 407–08 (5th Cir.1985) (failure to brief issue in accordance with Fed.R.App.P. 28(a) constitutes waiver of issue on appeal).

**8.** Needless to say, it is quite arguable that this was the safest procedure to follow. For example, by delaying with his hand in the boot in order to try to determine the nature of the item, Officer Perez could have arguably placed himself in a vulnerable position to attack by Maldonado, a much larger man.

Q   Now, before you checked his boots, you told him to stand in front of you so you could check his boots, is that—

A   Yes, I was always talking to him at the time.   That was—

Q   Okay.   And he was answering?

A   Yeah, he was, he was obeying what I was telling him but he was telling, you know, it would be all right.   Because I didn't know the person at the time and at that time, you know, the way he was acting, for my safety, you know, I was with him all the time.

Q   *Okay.   Now, after you checked his boots, you found that little round ball in the boots, could you tell it was not a gun?*

A   *I could tell it was not a gun.*

Q   *Could you tell it was not a knife?*

A   *Yes, I could tell.*

Q   *Okay.   Could you tell what was in that little ball?*

A   *At that moment, no.*

Q   Okay.   Now, from there, you and Officer Ruiz handcuffed Mr. Maldonado; is that correct?

A   From there we took him behind the truck and we restrained him.

Q   How did you restrain him?

A   Well, I took him by the arm and took him over there behind the truck and told him—

Q   And Officer Maldonado [sic] handcuffed him?

A   Right there I told Mr. Maldonado what he had there.   He didn't know what it was, you know.   He had, he didn't know about it.

Q   Okay.   And so then you handcuffed Mr. Maldonado right after that?

A   I handcuffed him, I believe.

Q   Okay.

A   Because I suspected there was some kind of a drug.

Q   Okay.

A   I have been in similar cases, I've seen some drugs in duct tape and stuff like that.

Q   Okay.   And then it was after you handcuffed him that you took a knife from Mr. Ruiz and opened the bag?

A   We just put a little incision to see what it was.

Q   Okay, but it was after he was handcuffed, that's what I'm asking.

A   At the time, I believe he was restrained.   When I found the incision, I put the cuffs in there, [and] I told him about his Mirandas. . . .

(Emphasis added.)

Concerning finding the package in the boot, it is unclear from the pertinent questions (in italics) whether Maldonado's lawyer was asking Officer Perez if he determined that the package was not a weapon while he checked inside the boot, as opposed to after he removed it.   Maldonado's lawyer asked Officer Perez about what he found "after you checked his boots", not what he found while in the process of doing so.   Furthermore, in conjunction with next asking Officer Perez whether Maldonado was handcuffed after Officer Perez determined that the package was not a weapon, it appears that Maldonado's lawyer was referring to the point in time between when Officer Perez removed the package and restrained Maldonado.

Moreover, in conjunction with the sequence of events, the question "[c]ould you tell what was in that little ball", to which Officer Perez replied, "[a]t that moment, no", can be understood to be referring likewise to after Officer Perez had removed the package, but before he made an incision in it (after restraining Maldonado).   Based on Officer Perez's answer, in which he used the phrase "at that moment", it appears that Officer Perez understood the question to concern post-removal.   This is consistent with Officer Perez's subsequent answers that he restrained Maldonado and then made an incision in the package because he (Officer Perez) "suspected there was some kind of a drug", had "been in similar cases", and had "seen some drugs in duct tape".

Argument presented at the hearing by Maldonado's lawyer after the testimony further indicates that he was concerned only with post-removal probable cause.   After asserting again that there was a factual dispute as to whether Maldonado was speeding, he stated:

But assuming the Court should find that [Maldonado] was in fact speeding, once they found the package, it was in their custody and they arrested him without knowing what was in there, they had the package in their custody, I would think that they ... should take it in and get a warrant for it at that time, if they had probable cause to open it. There's nothing, no reason to open that package there. Plus, they had arrested him illegally because they didn't have any reason to arrest him at that time. It appears to me from the facts that he was under arrest. [Officer] Ruiz testified that they put the handcuffs on and then they opened the package. And I think they put ... the carriage before the horse.... *That's all I've got.*

(Emphasis added.)

In ruling, the district court did not address the *Dickerson* issue. (Because it was not raised.) It stated in part:

The pat-down occurred after permission was given for the money, but with respect to the boot, the Court finds that there was no consent given. The Court does not believe that that was a consensual pat-down. The Court finds that the defendant was told to stay put, I'm going to pat you down. At that point I believe that the officer was more in control than asking permission and was not asking permission but was telling the defendant what to do.... Officers have a right to be concerned with their own safety and to take reasonable precautions to assure ... that they are safe and other members of the public are safe. The officer did nothing untoward in simply checking the defendant for weapons to protect himself.... The events occurring after that were recognized by Officer Perez to be a drug find. Perez recognized the wrapped ball to be

drugs, having been in the circumstance before, and he is in fact the one that opened the ball of heroin. There is no need at that point ... to call in a judicial inquiry. [Officer Perez] has probable cause, recognizing the nature of the contraband and being an automobile stop, to make reasonable inquiry as to what it was and to search it, and searching it reasonably by making a small incision, heroin was recognized, the defendant was lawfully arrested. Motion to suppress denied.

As reflected above, the district court ruled on the issues presented it. Had the *Dickerson* issue been presented, testimony could have been taken, and argument received, on that issue; and the district court would have dealt with it. As stated, because the issue was not raised in the district court, we review only for plain error. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").[9]

## 2.

■ As discussed in *United States v. Calverley,* plain error analysis includes four steps. *See United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Rodriguez,* 15 F.3d 408 (5th Cir.1994). First, there must be an error; that is, "a deviation from a legal rule in the absence of a valid waiver". *Calverley,* 37 F.3d at 162. Second, the error must be "plain"; errors are plain if they "are so conspicuous that 'the trial judge and prosecutor were derelict in countenancing [them], even absent the defendant's timely assistance in detecting [them]'". *Id.* at 163 (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)).[10] Third, the plain error must be

9. The government does not contend that the *Dickerson* issue was not raised in district court. It is imperative that parties to an appeal be vigilant in ensuring that we are advised whether an issue is being presented for the first time on appeal. Although we review the record for that purpose, this review, obviously, occurs only after the briefs have been filed. Needless to say, the briefs should cover this point, not only because we want the benefit of the parties' review of the record (in that they tried the case, they should

know it best), views, research, and opinions on this point, but also because this point drives numerous factors critical to appellate review, including the standard of review and questions asked at oral argument.

10. As our en banc court noted in *Calverley,* we must be mindful to give sufficient weight to the "plain" element of plain error analysis. *Id.* at 163–64. In *United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508

prejudicial: "Absent a showing that a substantial right has been compromised, no remedy is available." *Id.* at 164. Fourth, and finally, if the first three criteria are satisfied, we still have discretion whether to correct the error; correction is not mandatory. *Id.* "[P]lain forfeited errors affecting substantial rights should be corrected on appeal only if they 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

As demonstrated by the detailed review of the suppression proceeding, and especially because of the confusion concerning the only testimony touching on the *Dickerson* issue (that pertaining to "after you checked his boots, you found that little round ball in the boots"), it is far from clear that there was error. But, even assuming error, it was not "plain". Accordingly, we proceed no further in our analysis.

### B.

▪ The district court's refusal to reduce Maldonado's offense level for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines is reviewed under a standard "even more deferential than a pure clearly erroneous standard." *United States v. Tello*, 9 F.3d 1119, 1122 (5th Cir.1993) (citation omitted). The ruling "should not be disturbed unless it is without foundation." *United States v. Robertson*, 872 F.2d 597, 610 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989) (citations omitted).

▪ Guidelines § 3E1.1(a) states that the reduction is in order only "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense". Comment 2 to § 3E1.1 provides that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual ele-

ments of guilt, is convicted, and only then admits guilt and expresses remorse."

Maldonado seeks to excuse putting the government to trial by noting that the district court did not permit him to enter a conditional plea (to preserve his right to appeal his Fourth Amendment claim). Accordingly, he maintains that he accepted responsibility because, apart from the challenge to the seizure of the heroin, he "stipulated to everything that could be stipulated" and waived his right to a jury trial.

Rule 11(a)(2) of the Federal Rules of Criminal Procedure permits entry of a conditional guilty plea only "[w]ith the approval of the court". As our court has stated, a district court is "free to reject a conditional plea for any reason or no reason at all." *United States v. Bell*, 966 F.2d 914, 916 (5th Cir. 1992). Given the district court's absolute discretion, we decline, in reviewing its acceptance of responsibility ruling, to impose any consequence on its earlier refusal to allow a conditional plea.

When a defendant elects to go forward with trial, comment 2 to § 3E1.1 states that it is a "rare situation" when the defendant may nonetheless qualify for acceptance of responsibility. The stated example is when a defendant goes to trial only to "preserve issues that do not relate to factual guilt". Maldonado asserts that his motion to suppress was not related to factual guilt; thus, that his case falls within that "rare situation".[11]

Maldonado was charged with possession of heroin with intent to distribute. The dispositive evidence was the very evidence he sought to suppress—the heroin found in his boot. The district court determined that this evidence was both necessary and sufficient to support Maldonado's conviction. As a result, there was nothing more of consequence for Maldonado to admit or accept responsibility for. Accordingly, the district court concluded that a challenge to the admissibility of the evidence is indistinguishable from a challenge

(1993), "plain" was described as synonymous with "clear" or "obvious".

**11.** The comment's examples of matters "[unrelated] to factual guilt" are "constitutional challenge[s] to a statute" and "challenge[s] to the

applicability of a statute to [specific conduct]". Obviously, these instances are much further removed from "factual guilt" than a challenge to the very evidence establishing factual guilt.

to factual guilt.[12]  Indeed, Maldonado's only practical defense was to challenge the admissibility of the heroin.  Under these circumstances, the rejection of acceptance of responsibility was not "without foundation".

### III.

For the foregoing reasons, the judgment is AFFIRMED.

Justice WHITE concurs in the judgment of affirmance.

---

12.  At sentencing, the district court stated: [U]nless you suppress the evidence, there can be no defense because the charge was possession....  [W]hat else [could you] plead with drugs in the boots?  It's hard to plead lack of knowledge when you've got a bulge in your boot and you go around limping because ... you're stepping on something....  If the effort [to suppress] would have been successful, there would have been no successful prosecution ... because this was basically a possession issue.