# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 7, 2020

Lyle W. Cayce
Clerk

No. 19-40526

United States of America,

*Plaintiff—Appellee*,

*versus*

Christopher Omigie, *also known as* Chief,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:13-CR-96-8

Before Higginbotham, Jones, and Higginson, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

Upon pleading guilty to conspiring with intent to distribute cocaine, Appellant Christopher Omigie was sentenced to 168 months' imprisonment followed by five years of supervised release. He was also ordered to forfeit $250,000. On appeal, Omigie raises five challenges to his conviction and sentence. We affirm Omigie's conviction, but we remand for the district court to determine whether the condition of supervised release imposed in his judgment is consistent with the court's oral pronouncement at sentencing.

## I.

From the early 2000s until his arrest in 2013, Cesar Alvarez-Barrera ("Barrera") ran a Houston-based drug-trafficking organization ("DTO") that imported large shipments of cocaine from Mexico. On crossing the border, the cocaine was distributed to a network of stash houses in and around Houston. Couriers employed by Barrera would then pick up bulk loads of cocaine and deliver them to local dealers, who in turn would distribute the drug to customers both inside and outside the state. The proceeds generated by the scheme were carried by hand or "secreted in hidden compartments and voids in motor vehicles" back across the border, where they could be laundered and returned to general circulation.

A trafficking scheme of this magnitude and duration each day brings fear of apprehension by law enforcement. In 2003, Barrera found a way to assuage his fear when he met Appellant Christopher Omigie. Omigie is a naturalized U.S. citizen originally from Nigeria, where he claims to have been a "chief" or "king." He held himself out to Barrera and other drug dealers as "a person with supernatural powers" that included "the ability to divine the future" and "the ability to ward off law enforcement detection of criminal schemes."

Omigie soon began working with Barrera, providing "supernatural protection" for the DTO through such means as "read[ing] cards," cleansing conspirators with what he called "snake oil" (aptly named), selling magic candles, and cutting slits into Barrera's skin with a razor. In return, Barrera paid Omigie somewhere between $250,000 and $300,000 over the course of ten years. Barrera also paid for Omigie's periodic flights to Nigeria so that Omigie could "[r]epower [h]is energy."

Eventually, Omigie became active in the day-to-day operation of the DTO, demanding complete information about each cocaine deal before it

happened and threatening to "crash" the organization when he was crossed. On one occasion, Omigie instructed Barrera to withhold cocaine from one dealer in favor of another. In another conversation, Barrera and Omigie discussed a cocaine transaction that Omigie was "controlling."

Ultimately, Omigie's supernatural powers were no match for federal authorities, who began investigating the DTO in the 2000s, making numerous controlled buys and recording incriminating phone calls among key players. In September 2013, Omigie and seven others were charged with conspiring with intent to distribute cocaine and conspiring to launder drug proceeds. The indictment included a notice of forfeiture, which provided that should the defendants be convicted, they would forfeit to the Government $100,000,000, "representing the amount of proceeds obtained as a result of the" cocaine-trafficking conspiracy. Omigie's court-appointed counsel negotiated a plea agreement for a 48-month sentence. However, shortly before that plea was to be entered, Omigie moved to substitute his counsel for an attorney retained by his family and friends. The magistrate judge granted the motion following a hearing, and Omigie and his new counsel decided to proceed to trial.

The trial did not last long. The Government's first witness was Barrera, who testified to the various protective measures Omigie had undertaken for the DTO, as well as Omigie's role in the DTO's operations.[1] When the court broke for lunch, Omigie reversed course and decided to plead guilty to the cocaine-trafficking count. In exchange, the Government moved to dismiss the money-laundering count. Following a plea hearing, Omigie was sentenced to 168 months' imprisonment—the bottom of his advisory

---

[1] At the time of his testimony, Barrera was serving a twenty-year sentence for cocaine distribution.

No. 19-40526

Guidelines range—to be followed by five years of supervised release. The district court also entered an order requiring Omigie to forfeit $250,000.

On appeal, Omigie raises five objections to his conviction and sentence.[2] He contends that the district court erred by (1) failing to admonish him of his statutory minimum sentence, thereby rendering his guilty plea involuntary; (2) failing to observe certain procedural prerequisites to its forfeiture order; (3) enhancing Omigie's sentence on the ground that he was a manager or supervisor of criminal activity; (4) denying Omigie a downward adjustment for acceptance of responsibility; and (5) imposing a special condition of supervised release in his written judgment that it had not orally pronounced at sentencing.

## II.

## A.

Federal Rule of Criminal Procedure 11 "ensures that a guilty plea is knowing and voluntary by requiring the district court to follow certain procedures before accepting such a plea."[3] Among those procedures, "the court must inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty" attending his conviction.[4] Because Omigie did not raise a Rule 11 objection in the district court, we review for plain error.[5] To prevail, Omigie must demonstrate (1) an error

---

[2] Omigie did not appeal within fourteen days of the entry of judgment, as required by Federal Rule of Criminal Procedure 4(b)(1)(A). However, the district court granted him permission to file an out-of-time appeal.

[3] *United States v. Reyes*, 300 F.3d 555, 558 (5th Cir. 2002).

[4] FED. R. CRIM. P. 11(b)(1)(I).

[5] *United States v. Brown*, 328 F.3d 787, 789 (5th Cir. 2003); *see United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012).

No. 19-40526

(2) that is "clear or obvious" and that (3) "affected [his] substantial rights."[6] A Rule 11 error affects a defendant's substantial rights only if there is "a reasonable probability that, but for the error, he would not have entered the plea."[7] If the first three prongs of plain-error review are satisfied, we may exercise our discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."[8]

**B.**

Omigie's cocaine-trafficking conviction carries a mandatory minimum sentence of ten years' imprisonment.[9] At Omigie's change of plea hearing, the district court stated:

> I must advise you of the mandatory minimum penalty provided by law, if any, and the maximum possible penalties that may be imposed upon you. If I accept your plea of guilty, you could be sentenced to a term of imprisonment of not less than 10 years nor more than life . . . .

Omigie then affirmed that he "underst[ood] the range of punishment that applie[d] in" his case.

Omigie now takes issue with the terms "if any" in the first sentence of the court's pronouncement and "could" in the second. He argues that this conditional language "fail[ed] to convey the mandatory nature of the minimum penalty." Standing alone, the court's admonishment might admit some ambiguity. However, as in other cases where the district court's

---

[6] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[7] *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *see Broussard*, 669 F.3d at 546.

[8] *Puckett*, 556 U.S. at 135 (internal alterations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[9] 21 U.S.C. § 841(b)(1)(A).

statements "could have been more artfully phrased," we will look to the entire record to determine whether there was plain error.[10]

The record shows that Omigie was repeatedly notified of the ten-year mandatory minimum sentence attending his cocaine-trafficking charge. The Government's penalty notice, which was attached to Omigie's indictment, reflected the mandatory minimum, as did two amendments to that notice. Omigie was also orally advised of the mandatory minimum at his initial appearance, where he confirmed that he understood the sentencing range. Finally, Omigie did not object to the presentence investigation report's ("PSR") statement that "[t]he minimum term of imprisonment is 10 years and the maximum term is Life," nor did he attempt to withdraw his plea after reviewing the PSR.

In short, the record makes clear that Omigie was aware of his sentencing exposure and would have pleaded guilty regardless of any error in the district court's admonishment.[11] Indeed, Omigie does not argue otherwise; he asserts only a theoretical possibility that he may not have understood the mandatory minimum. That assertion is inadequate to show plain error.[12]

---

[10] *United States v. Huey*, 194 F. App'x 265, 266 (5th Cir. 2006) (unpublished) (per curiam); *see United States v. Regester*, 203 F. App'x 684, 686 (5th Cir. 2006) (unpublished) (per curiam).

[11] *See United States v. Carroll*, 280 F. App'x 352, 353 (5th Cir. 2008) (unpublished) (per curiam) (Where "the transcript of the rearraignment [and] the presentence report" both correctly stated the mandatory minimum, the defendant "cannot show a reasonable probability that, but for the district court's failure to advise him of the mandatory minimum penalty, he would not have pleaded guilty.").

[12] *See Broussard*, 669 F.3d at 546.

### III.

### A.

Omigie next challenges the district court's final order requiring him to forfeit $250,000 as proceeds of his drug-trafficking activities. He argues that the court violated Federal Rule of Criminal Procedure 32.2, which sets forth the procedures a district court must follow before entering a judgment of forfeiture.

Under Rule 32.2, the defendant's indictment must include a notice that the Government is seeking "forfeiture of property as part of any sentence" ultimately imposed.[13] Then, after the defendant is convicted or pleads guilty, the court must "determine what property is subject to forfeiture."[14] "If the government seeks a personal money judgment," as it did in this case, the court must also "determine the amount of money that the defendant will be ordered to pay."[15] Then, the court "must promptly"—if possible, in advance of sentencing—"enter a preliminary order of forfeiture setting forth the amount of [the] money judgment."[16] Next, "[t]he court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing."[17] Finally, "[t]he court must also include the forfeiture order, directly or by reference, in the judgment, but the court's failure to do so may be corrected at any time under Rule 36."[18]

---

[13] Fed. R. Crim. P. 32.2(a).

[14] Fed. R. Crim. P. 32.2(b)(1)(A).

[15] *Id.*

[16] Fed. R. Crim. P. 32.2(b)(2)(A)–(B).

[17] Fed. R. Crim. P. 32.2(b)(4)(B).

[18] *Id.*

We generally review "the district court's findings of fact under the clearly erroneous standard, and the question of whether those facts constitute legally proper forfeiture *de novo*."[19] However, where a defendant fails to object "[d]espite being on notice of the forfeiture and having the opportunity to object," we review for plain error.[20]

## B.

Omigie's indictment included a forfeiture notice as required by Rule 32.2. However, the district court failed to comply with the remainder of the Rule's requirements: the court did not enter a preliminary order of forfeiture and did not address forfeiture at Omigie's sentencing hearing, despite the Government having moved for a final order of forfeiture beforehand. In addition, Omigie's judgment did not mention forfeiture, and the final forfeiture order was not entered until a week after sentencing.[21]

Regardless, Omigie was on notice that the Government sought forfeiture. As mentioned, his indictment included a forfeiture notice, and the magistrate judge advised him at his initial appearance that the Government was seeking forfeiture. Then, at his guilty plea hearing, Omigie acknowledged that he had discussed his indictment with counsel and understood its contents. At the same hearing, the court advised Omigie that it "may order [him] to . . . forfeit certain property to the government," though it did not

---

[19] *United States v. Juluke*, 426 F.3d 323, 326 (5th Cir. 2005) (quoting *United States v. Marmolejo*, 89 F.3d 1185, 1197 (5th Cir. 1996)).

[20] *United States v. Marquez*, 685 F.3d 501, 510 (5th Cir. 2012).

[21] The final order of forfeiture also contained a minor factual inaccuracy. It stated that in his plea agreement, Omigie had "agreed that he had obtained" $250,000 "in proceeds from the offense." In fact, Omigie had pleaded guilty without benefit of a written plea agreement. The misstatement likely stemmed from the fact that Omigie had initially negotiated a plea agreement containing such an admission but subsequently opted to go to trial.

No. 19-40526

specify what property that might be. Finally, the Government filed its motion for a final order of forfeiture on the morning of Omigie's sentencing and certified that defense counsel had received the filing. Under our precedent, these steps were adequate to put Omigie on notice.[22] Because he failed to object despite the opportunity to do so, we review for plain error.

The Government concedes the first two prongs of the plain-error test, admitting that the district court's failure to follow Rule 32.2 was "clear and obvious" error. However, the Government contends Omigie cannot show that the error affected his substantial rights. We agree. To satisfy the third prong of plain-error review, Omigie must demonstrate "a reasonable probability that any forfeiture imposed would have been less than" $250,000.[23] Omigie makes no attempt to satisfy this burden, nor could he in light of Barrera's uncontroverted testimony that he paid Omigie between $250,000 and $300,000 for his protective services. The forfeiture order must stand in spite of the district court's procedural shortcomings.

## IV.

## A.

Omigie argues that the district court erred by applying a three-level aggravating-role adjustment for his position as a manager or supervisor of the DTO. This role adjustment is proper where "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."[24]

---

[22] *See United States v. Davalos*, 810 F. App'x 268, 271–72 (5th Cir. 2020) (unpublished) (per curiam); *Marquez*, 685 F.3d at 510 n.1.

[23] *Marquez*, 685 F.3d at 510.

[24] U.S.S.G. § 3B1.1(b). Defendants found to be organizers or leaders of criminal activity are subject to a four-level upward adjustment. *Id.* § 3B1.1(a). Omigie's PSR

No. 19-40526

"Whether a defendant exercised an aggravating role . . . is a finding of fact reviewed for clear error."[25] A district court's imposition of a leadership-role adjustment "is not clearly erroneous if it is plausible in light of the record as a whole."[26] We will reverse only if, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed."[27]

## B.

Omigie does not challenge the number of participants in the cocaine-trafficking scheme. Indeed, he admitted at his plea hearing that he worked with six co-conspirators, while his PSR placed the number several times higher. Instead, Omigie argues that the role adjustment was unwarranted because he did not "exercise[] any control or decision-making authority over" the DTO; his "co-defendants simply went to him for 'witchcraft.'"

We disagree. Barrera's testimony about Omigie's position within the organization provided ample support for the leadership-role adjustment. For example, Barrera testified that Omigie required him, his buyers, and his couriers to remain in contact with Omigie before, during, and after cocaine transactions.[28] When business slowed down, Omigie threatened Barrera that he must "do something" or Omigie would "crash" the entire enterprise.

---

recommended he receive this larger adjustment, but the district court determined at sentencing that Omigie was "a supervisor/manager more than an organizer/leader."

[25] *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015).

[26] *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013).

[27] *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006) (quoting *United States v. Cabrera*, 288 F.3d 163, 168 (5th Cir. 2002)).

[28] Another co-conspirator, Ricky St. Julien, likewise testified at a pretrial hearing that he was required to report to Omigie for a meeting before each drug transaction so that Omigie could perform certain rituals to prevent detection by authorities.

No. 19-40526

Omigie made similar threats to others when they disobeyed him. In one recorded phone conversation, Omigie referred to himself as "the boss" of the DTO, a characterization with which Barrera agreed. On another occasion, Omigie directed Barrera to withhold cocaine from one dealer and instead provide it to another dealer who needed a "jump start."

All this testimony supports the inference that Barrera and others acted at Omigie's direction, apparently under the belief that Omigie could control the fate of their transactions. Given Omigie's directorial power, the district court did not clearly err in imposing a leadership-role adjustment.[29]

## V.

### A.

Omigie next argues that the district court erred by denying him an adjustment for acceptance of responsibility despite the fact that he pleaded guilty. Section 3E1.1(a) of the Sentencing Guidelines provides for a two-offense-level downward adjustment "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." The accompanying commentary makes clear that a defendant "is not entitled to an adjustment" simply by virtue of pleading guilty.[30] Other factors, including "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility," may outweigh a defendant's plea.[31]

---

[29] *See Zuniga*, 720 F.3d at 592.

[30] U.S.S.G. § 3E1.1 cmt. n.3; *see United States v. Pierce*, 237 F.3d 693, 694 (5th Cir. 2001).

[31] U.S.S.G. § 3E1.1 cmt. n.1(H).

The district court "is in a unique position to evaluate a defendant's acceptance of responsibility,"[32] and its refusal to award a § 3E1.1(a) reduction "is reviewed under a standard even more deferential than a pure clearly erroneous standard,"[33] that "should not be disturbed unless it is without foundation."[34]

**B.**

The district court denied Omigie a § 3E1.1(a) adjustment primarily because he did not plead guilty until after the court had conducted "an extended pretrial hearing . . . as to whether he could be referred to as a 'witch doctor,'" voir dire, and half a day of trial testimony.[35] We have "routinely upheld the denial of a reduction for acceptance of responsibility when a defendant waits until the eve of trial to enter a guilty plea."[36] In this case, Omigie made the Government play its hand in open court before changing his plea. This tactical move "is more than enough to warrant" denial of an acceptance adjustment.[37]

---

[32] *United States v. Cabrera*, 288 F.3d 163, 175 (5th Cir. 2002) (per curiam) (quoting U.S.S.G. § 3E1.1 cmt. n.5).

[33] *United States v. Najera*, 915 F.3d 997, 1002 (5th Cir. 2019) (quoting *United States v. Maldonado*, 42 F.3d 906, 913 (5th Cir. 1995)).

[34] *Maldonado*, 42 F.3d at 913 (internal quotation marks omitted).

[35] The court also noted that even at sentencing, Omigie was still "trying to minimize his role" in the conspiracy.

[36] *United States v. Taylor*, 331 F. App'x 287, 288 (5th Cir. 2009) (unpublished) (per curiam) (citing *United States v. Diaz*, 39 F.3d 568, 570 (5th Cir. 1994), and *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994)).

[37] *United States v. Moreno*, 760 F. App'x 266, 272 (5th Cir. 2019) (unpublished) (per curiam).

No. 19-40526

## VI.

### A.

Finally, Omigie contends that the district court erred by imposing a special condition of supervised release in his written judgment that it had not orally pronounced at sentencing. The district court's obligation to orally pronounce its sentence is grounded in the defendant's right to be present at sentencing, which in turn is derived from the Fifth Amendment's Due Process Clause.[38] In addition to custodial sentences, the oral-pronouncement requirement applies to discretionary conditions of supervised release—that is, all conditions not made mandatory by 18 U.S.C. § 3583(d).[39] However, as our en banc Court recently made clear in *United States v. Diggles*, the district court need not recite each non-mandatory condition of supervised release word for word at sentencing.[40] It may instead orally adopt a document (typically a PSR) that lists the proposed conditions, so long as "the defendant had an opportunity to review it with counsel" and the oral adoption is made "when the defendant is in court."[41]

Where there is a conflict between the court's oral pronouncement and the written judgment, the oral pronouncement controls,[42] and "the appropriate remedy is remand to the district court to amend the written judgment to conform to the oral sentence."[43] Our standard of review depends on whether the defendant had notice of the proposed conditions and

---

[38] *See United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam).

[39] *United States v. Diggles*, 957 F.3d 551, 563 (5th Cir. 2020) (en banc).

[40] *Id.* at 561.

[41] *Id.* at 561 n.5.

[42] *United States v. Mireles*, 471 F.3d 551, 557 (5th Cir. 2006).

[43] *Id.*

an opportunity to object before the district court. If he had no opportunity to object, we review for abuse of discretion; if he had the opportunity but failed to object, plain error review applies.[44]

## B.

Omigie's judgment contains one special condition of supervised release: He must "provide the probation officer with access to any requested financial information for purposes of monitoring [his] sources of income." Because this condition is not mandatory under 18 U.S.C. § 3583(d), it must be orally pronounced.[45] Omigie contends the oral-pronouncement requirement was not satisfied because the district court did not recite the condition at sentencing. Rather, it orally adopted Omigie's PSR and stated that he must "comply with the mandatory and special conditions set forth in [his] presentence report."

As *Diggles* made clear, the district court's oral adoption of a PSR containing proposed supervised-release conditions may satisfy the oral-pronouncement requirement.[46] In this case, however, the financial-reporting condition did not appear in Omigie's PSR, but was instead listed in a separate sentencing recommendation. Although that recommendation was filed contemporaneously with the PSR, we cannot be certain that it was shared with the defense.[47] Because it is unclear whether Omigie and his counsel were

---

[44] *Diggles*, 957 F.3d at 559–60; *see United States v. Huor*, 852 F.3d 392, 397–98 (5th Cir. 2017).

[45] *See Diggles*, 957 F.3d at 563.

[46] *See id.* at 560–61, 561 n.5.

[47] The PSR and sentencing recommendation were filed into the record under the same document number, indicating that defense counsel likely received the recommendation along with the PSR. However, the *Diggles* Court noted that "district courts differ on whether they disclose [sentencing recommendations] to the parties" along with the defendant's PSR. *Id.* at 555 n.1. The Court also made clear that "conditions cannot

No. 19-40526

able to review the financial-reporting condition ahead of sentencing, we remand for the district court to determine whether the sentencing recommendation was disclosed to Omigie as part of his PSR. If it was not, the court must conform Omigie's written judgment to its oral pronouncement by removing the financial-reporting condition from the judgment.

## VII.

For the foregoing reasons, Omigie's conviction, custodial sentence, and forfeiture order are affirmed. We remand to the district court for the limited purpose of ensuring that Omigie's condition of supervised release is consistent with the court's oral pronouncement at sentencing.

---

be incorporated by reference when they are listed only in a [sentencing] recommendation that has not been disclosed to the defendant." *Id.*