**UNITED STATES of America**

v.

**William LITTLE, a/k/a "Melvin Gibson," Defendant.**

**No. 96 Cr. 615 (SAS).**

United States District Court, S.D. New York.

Nov. 1, 1996.

---

John J. Byrnes, Federal Defenders Services Unit, New York City, for William Little.

Robin L. Baker, Assistant United States Attorney, Mary Jo White, United States Attorney, Criminal Division, New York City, for the U.S.

## Memorandum Opinion

SCHEINDLIN, District Judge.

Defendant, William Little, a/k/a Melvin Gibson, is charged in a one count indictment with possession of a firearm by a prior felon in violation of 18 U.S.C. § 922(g). Defendant moves to suppress evidence seized from him and from the car he was driving on the night of his arrest and to suppress his post-arrest statement made later that night. A suppression hearing was held on October 8 and 9, 1996. Based on the evidence presented at the hearing, defendant's motion to suppress is denied.

### I. *Facts*

#### A. *The Government's Version*

The Government presented the testimony of three New York City police officers who were on patrol on the night of July 17, 1996. Each of the officers was assigned to the Anti–Crime Unit of the 44th Precinct in the Bronx. Two of the officers testified that they saw a red Neon run a red light at Jerome Avenue and 172nd Street. As a result, the officers pulled the car over. The defendant was the driver of the vehicle, which also had two passengers. Officer Louis Cruz testified that he approached the driver's side of the car. Because the window was open he noticed "[a] strong smell of marijuana from the car." Hearing Transcript ("Tr.") of 10/8 at 11. Officer Kevin Maas approached the passenger side of the car, whose window was also open. Officer

Maas testified that he also smelled marijuana. Tr. of 10/9 at 32. Maas further testified that the men in the car seemed nervous and agitated. *Id.*

Officer Cruz testified that the defendant admitted that they had been smoking marijuana in the car. Tr. of 10/8 at 54–56. Officer Cruz then asked defendant for his driver's license and was handed a learner's permit for a C.S. Garrett. *Id.* at 12–13 and Gov't Ex. 1. The picture on the permit was not that of the defendant. The defendant explained that the permit belonged to the person who had rented the car and that he (the defendant) did not have a driver's license. *Id.* at 13, 48–50. Cruz then asked the men to step out of the car. *Id.*

The third officer, Sergeant Kevin Leddy then frisked the defendant. Leddy testified that he was looking for a weapon because he had smelled the marijuana and because defendant had presented false identification. *Id.* at 68–69. During the frisk, Sergeant Leddy felt bullets in the defendant's right front shorts pocket. *Id.* at 70–71. He then removed a plastic bag with bullets from defendant's pocket. Cruz then asked the defendant if there was a gun in the car. The defendant said he "didn't know." *Id.* at 17. Cruz then searched the car. He eventually found a .38 caliber gun located in a brown paper bag hidden below the spare tire compartment in the trunk of the car. *Id.* at 18–19. Officer Maas found a rental agreement that showed that the car was rented by "Garret Christopher" (*id.* at 34–35) and that the agreement provided that "No Other Driver [Was] Permitted." GX 5.

The three men were then arrested and taken to the precinct where Officer Cruz advised the defendant of his *Miranda* rights. *Id.* at 20–21. The defendant, using the initials "MG," initialed the advice-of-rights form. GX 3. He then wrote a statement that said that his two passengers did not know that the gun was in the car and that he bought the gun for $200. He signed the statement "Melvin Gibson." GX 4.

### B. *The Defendant's Version*

The defendant submitted a sworn affirmation and testified at the suppression hearing. He denied that he ran a red light (or committed any other traffic violation), stating that because he knew he had a gun in the car and had spotted the police, he drove very carefully. Tr. of 10/9 at 58–59. He admitted that after the stop he gave Officer Cruz Christopher Garret's learner's permit and the car rental contract. He further admitted that he did not have a valid driver's license. Finally, he also admitted that one of the passengers told the police that they had been smoking marijuana in the car. *Id.* at 64–66.

At this point, defendant's testimony conflicts sharply with that of the police officers. Little testified that there were two pat downs. During the first, defendant was asked if he had anything in his pocket. He admitted that he had a beeper, but nothing more. The officers then searched the car. On the second pat down, the officer reached into his pocket, removed the beeper, and found bullets clipped on the back of the beeper. Defendant testified that the officer could not have felt the bullets in his pocket as they were flush with the back of the beeper.

After the seizure of the bullets, the defendant's testimony again converges with that of the officers. He admits that a gun was found in the trunk of the car. *Id.* at 75–76. He admits that he was read his rights at the precinct, albeit two to three hours after his arrest (*id.* at 77–78), but did not testify that anyone questioned him prior to advising him of his rights. Little admits that he initialed the advice of rights form and gave a statement which he signed with the name "Melvin Gibson." Finally, Little states that he never gave the officers permission to search his pockets or the car. *See* Little Affirmation at ¶ 10. The Government appears to agree that consent to search was neither sought nor given.

## II. *Discussion*

### A. *The Initial Stop*

 The issue raised at this hearing is solely one of credibility. The officers were justified in stopping the car driven by defendant if they had a reasonable basis to believe that the driver had committed a traffic violation. *See Whren v. United States,* —— U.S.

———, ———, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) ("As a general matter the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.), *cert. denied,* ——— U.S. ———, 115 S.Ct. 207, 130 L.Ed.2d 136 (1994). On balance, I credit the testimony of the police officers. Two officers testified that they personally observed defendant drive through a red light. The testimony also revealed that when these plainclothes anti-crime unit officers are on patrol, they routinely stop cars for traffic violations. While defendant makes much of the fact that no ticket was written for running a red light, this is not surprising under the circumstances of this stop and subsequent arrest. By the time the stop was complete, the officers had seized bullets and a gun, had learned that the occupants of the car had been smoking marijuana and concluded that none of the occupants of the car were authorized to drive it. There is no requirement that the police arrest a defendant for every crime he committed. Defendant was not arrested for the unauthorized use of a vehicle or the possession of marijuana, although there was a basis to charge him with both of these crimes.

By contrast, Little has a strong motive to testify falsely, had already lied to the police in the course of this investigation and was admittedly violating the law by driving without a license. Little is facing significant jail time if he is convicted of the weapons charge. In addition, defendant admitted to various lies and past instances of fraudulent conduct. He admitted to driving without a license, knowing that it was illegal to do so. When asked for his license, he produced a friend's learner's permit. When questioned by the police officers as to the contents of his pockets, he admitted that he had a beeper but said nothing about the bullets. His arrest record indicates several birthdates and two Social Security numbers. Defendant admit-

ted to a 1994 conviction for using a credit card in a false name and for an earlier conviction for credit card fraud. With this track record, Mr. Little's testimony is simply not credible. Neither of his passengers testified on his behalf at the hearing.

### B. *The Search of Defendant's Pocket*

■ Because the officers had probable cause to believe that defendant was engaged in criminal activity, they were permitted to arrest him and conduct a search incident to that arrest. Here, the probable cause for his arrest was based on the following observations: (a) defendant had run a red light; (b) defendant was driving without a license; (c) the learner's permit and rental car agreement produced by defendant were not in his name; (d) the officers were able to smell the odor of marijuana coming from the vicinity of the car; and (e) both the driver and a passenger admitted they had been smoking marijuana in the car. Because these observations provide probable cause for defendant's arrest, the seizure of the bullets from defendant's pocket will not be suppressed.[1]

■ Defendant argues that because he was not arrested until after the gun was seized from the car, the search of his pocket was illegal because it was not a search incident to an arrest. While it is true that defendant was not placed under arrest until the gun was found, probable cause to arrest him existed prior to the search of the car. *See United States v. Ruggiero*, 824 F.Supp. 379, 394 (S.D.N.Y.1993), *aff'd sub nom., United States v. Aulicino*, 44 F.3d 1102 (2d Cir.1995); *People v. Ellis*, 62 N.Y.2d 393, 396, 477 N.Y.S.2d 106, 465 N.E.2d 826 (1984). Once there is probable cause to effect an arrest, it is irrelevant whether the arrest preceded the search, so long as the arrest followed closely on the heels of the search. *See Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Donaldson*, 793 F.2d 498, 503 (2d

---

**1.** In the alternative, the doctrine of "inevitable discovery" also applies to the seizure of the bullets. Even though there was no probable cause to arrest defendant for possession of a weapon prior to the seizure of the weapon from the car, defendant could have been arrested for driving without a license and could have been searched incident to that arrest. As a result, the bullets would "inevitably" have been found. *See Nix v. Williams*, 467 U.S. 431, 444, 447–48, 104 S.Ct. 2501, 2509, 2510–11, 81 L.Ed.2d 377 (1984).

Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987).

▮▮▮ Even if there was no probable cause to arrest and search the defendant, the officers were permitted to frisk the defendant if they had a reasonable suspicion of criminal activity and reasonably believed that the defendant posed a threat to their safety or the safety of others. The officers clearly had a reasonable suspicion that defendant was engaged in criminal activity based on the factors set forth above. With respect to the second prong of the test, the officers testified that the occupants of the car appeared nervous. *See United States v. Maldonado,* 42 F.3d 906, 913 (5th Cir.1995) (frisk justified when officer feared for safety due to nervousness of suspect stopped for speeding). This observation, together with the surrounding circumstances (lateness of hour, smell of marijuana, admission that a "blunt" had been smoked in the car, driving without a license, unauthorized use of the car and traffic infractions), is sufficient to justify a frisk based solely on reasonable suspicion.

### C. *The Search of the Trunk of the Car*

[10] The first question that must be addressed is whether the defendant has standing to challenge the search of this vehicle. According to the car rental agreement, no one other than the lessee was authorized to drive the rental car. Defendant, however, has demonstrated that he had the permission of the lessee to use the car. *See* Affirmation of Christopher Garrett, annexed as Exhibit B to Defendant's Post Hearing Memorandum of Law. At least two courts have held that if the driver of a rental car has the permission of the lessee to drive the vehicle, then he has a legitimate possessory interest and accompanying expectation of privacy sufficient to establish standing to attack an unlawful

search of the vehicle. *See United States v. Muhammad,* 58 F.3d 353, 355 (8th Cir.1995) and *United States v. Kye Soo Lee,* 898 F.2d 1034, 1038 (5th Cir.1990), *cert. denied,* 506 U.S. 1083, 113 S.Ct. 1057, 122 L.Ed.2d 363 (1993). *Cf. United States v. Ochs,* 595 F.2d 1247, 1253 (2d Cir.1975) (driver had the permission of owner [as opposed to lessee] to use car thereby establishing a possessory interest in the vehicle and standing to move to suppress), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979).[2]

Defendant does not challenge the initial search of the vehicle, conceding that the smell of marijuana would create probable cause for the warrantless search of the car. *See* Defendant's Post Hearing Memorandum of Law at 13. Defendant does, however, challenge the later search of the trunk, arguing that the smell of marijuana, without additional corroborating evidence that drugs were present, prohibits a search of anything other than the passenger compartment of the car. *See United States v. Parker,* 72 F.3d 1444 (10th Cir.1995); *United States v. Dien,* 609 F.2d 1038 (2d Cir.1979). If indeed the police searched the trunk based solely on the smell of marijuana, that search would have been improper.

▮▮▮ Here, however, the police had developed additional evidence before searching the trunk. As discussed above, the bullets were properly seized from the defendant prior to the search of the trunk of the car. Thus, the smell of marijuana and the admitted use of marijuana in the car, combined with the discovery of bullets on the person of the defendant provided the police with probable cause to search the trunk of the car. *See United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Johns,* 469 U.S. 478, 482, 105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985); *United*

2. Three courts have reached the opposite conclusion. *See United States v. Wellons,* 32 F.3d 117, 119 (4th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *United States v. Roper,* 918 F.2d 885, 887–88 (10th Cir. 1990); *United States v. Boruff,* 909 F.2d 111, 117 (5th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991). On balance, I believe the cases cited in the text are persuasive. While the rental agreement provides that no one other than the lessee may drive the car, a violation of this term of the contract does not rise to the level of criminal conduct, but merely provides grounds for canceling the rental agreement. If the driver is authorized by the lessee to use the vehicle, the driver may legitimately conclude that the car is his during the time that he has permission to use it. The dominion and control which he exercises resulting from the authority extended by the lessee, albeit in contravention of the terms of the contract, gives him a possessory interest in the vehicle.

*States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).[3] Alternatively, as far as the officers knew, and pursuant to the terms of the car rental agreement, no occupant of the vehicle was authorized to drive it. As a result, the officers had the right to impound the car in order to return it to the car rental company. An inventory search of an impounded vehicle comports with standard police procedures.[4] *See United States v. Thompson,* 29 F.3d 62, 65 (2d Cir.1994). Such an inventory search would have included the trunk of the car. It makes no difference whether the inventory search is conducted on the street or at the station house. For each of these reasons, defendant's motion to suppress the seizure of the gun is denied.

### D. *The Post–Arrest Statements*

Defendant argues that because the seizure of the gun and the bullets was unlawful, the post-arrest statements must be suppressed as the fruits of an illegal search. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because I have already determined that the searches of the defendant and the car were proper and because Mr. Little was advised of his rights before making any statement, there is no basis for granting his motion to suppress the post-arrest statements.

### III. *Conclusion*

Each of defendant's motions to suppress is denied. A status conference is set for November 7 at 4:30 p.m. for the purpose of fixing a trial date.

SO ORDERED.

---

**3.** In addition, the seizure of the bullets provided the police with an independent ground to search the trunk of the car. *See United States v. Ruggiero,* 824 F.Supp. at 394.

**4.** The vehicle was not technically impounded. However, at the time of the arrest, the police believed that neither the driver nor the passengers were authorized to drive this vehicle. Unauthorized use of a vehicle is one of the offenses

which permits a vehicle to be impounded. As noted above, police officer need not arrest a defendant for each and every crime he is believed to have committed. Little was arrested for driving without a license and possession of a weapon. The police were not required to also arrest him for running a red light and the unauthorized use of a vehicle.