**UNITED STATES of America**

v.

**Guillermo GONZALEZ, and Evelyn Gonzalez, Defendants.**

**No. 7:95–cr–16 (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 23, 1997.

George Michael Saliba, II, Valdosta, GA, for Guillermo Gonzalez, defendant.

J. Converse Bright, Valdosta, GA, Bruce H. Fleisher, Coconut Grove, FL, for Evelyn Gonzalez, defendant.

## *ORDER*

OWENS, District Judge.

Before the court is defendants' motion to suppress evidence obtained in an automobile search. A hearing was held in open court on January 3, 1997, in Macon, Georgia. After carefully considering the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

On February 23, 1995, Deputy J.D. Yeager of the Lowndes County Sheriff's Department was patrolling Interstate 75 near Valdosta, Georgia. Deputy Robert Bishop of the Butts County Sheriff's Department accompanied Yeager in the car. Bishop was not in the car as an on-duty officer, but was being driven back to Butts County after having taught a course in highway interdiction.

The officers were travelling northbound near exit 2 when Yeager noticed a Lincoln Town Car moving slowly and swerving several times outside both the right and left lines marking the lane. Suspecting the driver might be intoxicated or falling asleep, Yeager pulled the car over. The driver, Guillermo Gonzalez, exited the car and produced a driver's license. Yeager asked who owned the car and Gonzalez answered that he had rented the car in Miami. Gonzalez gave Yeager a copy of the rental agreement, which named the primary renter as an Adalberto Valdes, who was not in the car. The rental agreement listed Gonzalez as an additional driver in one place and as an additional renter in another. Yeager told Gonzalez he had been stopped for weaving, and Gonzalez replied that he had been weaving because he had reached down to get something from the floor of the car.

Yeager would later testify that a number of factors made him suspicious during the course of his discussion with Gonzalez. Yeager's suspicion was first aroused by the discrepancy between Gonzalez' statement that he had rented the car and the rental agreement's naming of Adalberto Valdes as the primary renter. Second, Yeager testified that he thought it strange when Gonzalez said he was going to Atlanta to visit his ex-wife. Third, Gonzalez told Yeager that the passenger in the car was his daughter Evelyn Gonzalez, but her identification listed her name as Gloria Suarez. Deputy Yeager testified that the difference in last names aroused his suspicion because he noticed that the woman was not wearing a wedding band. Fourth, Yeager testified that throughout their discussion Gonzalez was very nervous and would not look him in the face. Finally, when Yeager told Gonzalez he was only going to issue a warning rather than a ticket, Gonzalez remained nervous rather than appearing relieved as most drivers would.

Yeager finished writing the warning ticket and handed it to Gonzalez, then asked Gonzalez if he could search the car. Gonzalez refused, saying he did not want the officers to upset his daughter (Government's Response to Defendant Suarez' Motion to Suppress, at 2). Yeager explained to Gonzalez that he felt justified in briefly detaining the car so that a canine unit could be called in to

sniff the car. He then called for the canine unit which was positioned approximately 500 yards down the highway. Yeager told Gonzalez he and his daughter were free to go but the car was not, and even offered Gonzalez a ride to the next service station. Gonzalez said he would stay with the car.

The canine unit, consisting of Deputy Dana Griffin and the dog Max, arrived within approximately two minutes of Gonzalez' refusing to give consent to have his car searched. Deputy Griffin walked Max around the car. She later testified that Max had showed interest in the right rear area of the car by moving his head from side to side as if getting ready to alert to the presence of drugs. At the time, however, Deputy Griffin concluded the search and only told Yeager that Max had "showed interest" in the car— she did not use the word "alert". Yeager, who at the time had not been trained in the use of drug dogs, took the statement as an indication that Max had not found drugs and allowed Gonzalez to drive off.

Deputy Bishop, who trained drug dogs as a sideline business, had been watching Max as he sniffed out the car. He testified that Max's behavior was consistent with a "body alert," and that this behavior usually meant the dog had detected a drug odor. Bishop testified that drug dogs are trained to pinpoint the strongest source of the odor before fully alerting, and in his opinion Max had been about to reach the full alert stage when he was pulled away by Deputy Griffin.

Once the officers were back in the car, Bishop informed Yeager that he thought Max had been about to alert for drugs. At the same time, the radio dispatcher reported to Yeager that Guillermo Gonzalez had a history of trafficking in cocaine. Upon learning these new pieces of information, Yeager decided to pull Gonzalez over a second time to conduct a full search of the vehicle.

Yeager pulled over Gonzalez for the second time approximately two minutes after Gonzalez had driven away from the site of the first stop and approximately fifteen minutes from the time Gonzalez had denied consent to a search of the car.[1] He informed Gonzalez that he felt he had probable cause to search the car and proceeded to do so. The search uncovered five kilograms of cocaine in the trunk and a loaded gun in the back seat. Defendants were arrested and have now moved to suppress all evidence obtained as a result of the search.

## DISCUSSION

### I. Standing

The government contends that neither defendant has standing to challenge the search. In order to challenge a search under the Fourth Amendment, a defendant bears the initial burden of establishing that he had a legitimate expectation of privacy in the premises or items searched. *United States v. Tobin,* 890 F.2d 319, 324 (11th Cir.1989).

■ The court finds that defendant Evelyn Gonzalez (a.k.a. Gloria Suarez) has failed to meet that burden. Although there is no dispute that Ms. Gonzalez was legitimately present in the car, the Supreme Court has rejected the argument that this alone is sufficient to confer standing. *Rakas v. Illinois,* 439 U.S. 128, 148, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). In *Rakas,* the Court held that passengers in a rented car who asserted neither a property nor a possessory interest in the automobile searched nor an

---

1. The time estimates are based on the testimony of the officers who testified at the suppression hearing and on the time shown on the videotape of the second stop taken by the camera mounted in Deputy Yeager's car. Deputy Yeager testified that there is no videotape of the first stop because his camera malfunctioned.

  Deputy Yeager offered the following time estimates while testifying at the suppression hearing: the first stop occurred at 2:26 p.m.; he handed the warning to Gonzalez and was denied consent to search the car approximately three minutes later; approximately two minutes after that the canine unit arrived; and approximately two minutes after Gonzalez drove away Yeager caught up with him and pulled him over the second time. The videotape shows that the second stop occurred at 2:47 p.m.

  According to these time estimates, somewhere in the neighborhood of fifteen minutes elapsed from the time Gonzalez denied consent (2:29) to the time he drove away from the site of the first stop (2:45). This, presumably, is the approximate amount of time it took for the canine unit to arrive and conduct the dog sniff.

interest in the property seized did not have standing to challenge the search of the glove compartment or the back seat. *Id.* The Court stated that "Like the trunk of an automobile, these are areas in which a passenger qua passenger simply would not normally have a legitimate expectation of privacy." *Id.* at 128–29, 99 S.Ct. at 433. As a mere passenger in the rental car, Ms. Gonzalez has failed to meet her burden by asserting a possessory or property interest in either the automobile or the property seized sufficient to confer upon her a legitimate expectation of privacy in either. *See United States v. McCulley,* 673 F.2d 346, 352 (11th Cir.1982) (citing *United States v. McConnell,* 500 F.2d 347 (5th Cir.1974)). Accordingly, she has no standing under *Rakas,* and all evidence obtained in the search of the car is admissible against her.

■ Her father and co-defendant Guillermo Gonzalez is in a different position. The Eleventh Circuit has never in a published opinion met the issue of whether the driver of a rental car has standing. However, a review of the case law existing in other jurisdictions persuades the court that while there is considerable dispute as to whether the driver of a rental car who is not listed on the rental agreement has standing to contest a search, the appearance of his name as an additional driver and as an additional renter is sufficient to confer a legitimate expectation of privacy in the rental car. *United States v. Morales,* 676 F.Supp. 560, 565 (D.Del.1987). *See also United States v. Little,* 945 F.Supp. 79 (S.D.N.Y.1996) (reviewing decisions of courts of appeals on issue of whether driver of rental car has standing by virtue of having permission to drive car from actual renter). The fact that Mr. Gonzalez was not only legitimately present in the car, but also had the right to exclude other people from the car and enjoyed the other rights concomitant with temporary control over the car is sufficient to confer standing upon him.

2. Nor does it matter that Yeager only detained the car and told Gonzalez that he and his daughter were free to leave. Seizure of the car is, of course, tantamount to a seizure of the person

## II. The First Stop

■ Defendant Guillermo Gonzalez does not dispute that Yeager was justified in pulling the car over initially to see why the car was weaving. A police officer may stop a vehicle when he has probable cause to believe that a driver is violating a traffic law. *United States v. Strickland,* 902 F.2d 937, 940 and n. 2 (11th Cir.1990). Mr. Gonzalez has not argued or presented any evidence that the initial stop was pretextual.

However, the car was detained after the traffic stop was concluded. On facts materially similar to the case at hand, the Eleventh Circuit has held that the initial traffic stop was concluded once the officer handed the warning to the driver and concluded that consent to search the car was not forthcoming. *United States v. Hardy,* 855 F.2d 753, 756 (11th Cir.1988). At the point that the traffic stop ends and consent to search the car is denied, if the car or its occupants are detained further, a new investigative "stop" begins. In order to be reasonable, the detention past the initial traffic stop must meet the requirements set out in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. The officer must be able to point to specific and articulable facts which, considered together along with the circumstances, justify a reasonable suspicion that the person seized is engaged in criminal activity. *Hardy,* 855 F.2d at 757 (citations omitted).[2] Without such reasonable suspicion the stop is illegal and any evidence obtained as a result of the stop will be inadmissible.

Yeager points to five facts that made him suspicious enough to detain Gonzalez after he had already handed him the warning and been denied consent to search the car: (1) the disparity between Gonzalez' statement that he had rented the car and the rental agreement's naming of him as an additional renter; (2) Gonzalez' statement that he was on his way to Atlanta to visit his ex-wife; (3) the different last name of Gonzalez' daughter Evelyn, in conjunction with the fact that she

when it impairs the person's possessory interest or ability to travel. *See United States v. Puglisi,* 723 F.2d 779, 785 (11th Cir.1984).

was not wearing a wedding band; and (4) Gonzalez' nervousness throughout the course of their discussion; and (5) the fact that Gonzalez remained nervous even after Yeager told him that he was only getting a warning.

The court finds that these facts—considered together along with the fact that Gonzalez was travelling from a known drug source city to a known drug destination—justified a reasonable suspicion and were therefore sufficient to permit the holdover necessary for the canine unit to arrive and conduct a sniff of the car. The holdover was brief (approximately fifteen minutes) and was reasonably conducted in a manner designed to be minimally intrusive while still allowing the officers to determine if there were drugs in the car. *Hardy*, 855 F.2d at 759. Consequently, in the court's best judgment the sniff of the car conducted by the canine unit did not violate Gonzalez' Fourth Amendment rights.

### III. The Second Stop

■ After pulling the car over the second time, Yeager conducted a full-scale search of the car. An officer may search a car if he has probable cause to believe that the car is being used to accomplish illegal acts. *United States v. Strickland*, 902 F.2d 937, 942–43 (11th Cir.1990) (holding that the exigent circumstances inherent in the mobile nature of automobiles are sufficient, in conjunction with probable cause, to justify a warrantless search of the car).

Bishop told Yeager the dog had "body-alerted" as soon as they got back in the car. Around the same time, the radio dispatcher informed Yeager that Gonzalez had a history of trafficking in cocaine. These facts are more than sufficient to constitute the probable cause necessary to pull Gonzalez over the second time and conduct a full-scale search of the vehicle. The fact that Yeager had not been trained in the use of canines at the time and was not aware before then that the dog had alerted is irrelevant. Once he became aware that the dog had shown sufficient interest to indicate to Officer Bishop the presence of drugs, he had probable cause to believe the car contained drugs, and was justified in conducting a full search.

### CONCLUSION

Defendant Evelyn Gonzalez' motion to suppress is **DENIED** for lack of standing. Defendant Guillermo Gonzalez' motion to suppress is also **DENIED**. Any evidence obtained from the search of the car may be used against either defendant.