10-2019-cr
United States v. Henderson

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 29ᵗʰ day of September, two thousand eleven.

PRESENT:
> ROGER J. MINER,
> PIERRE N. LEVAL,
> PETER W. HALL,
> > *Circuit Judges.*

———————————————————————————————

UNITED STATES OF AMERICA,

> > *Appellee,*

> v.                   No. 10-2019-cr

KWANE HENDERSON, AKA MICHAEL EDWARDS,
> > *Defendant-Appellant.*

———————————————————————————————

FOR APPELLEE:                Jessica Ortiz, Assistant United States Attorney (Katherine Polk Failla, Assistant United States Attorney, *of counsel*) *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT KWANE HENDERSON:      Jeffrey Pittell, Maher & Pittell, LLP, Great Neck, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).  **UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Kwane Henderson appeals from the district court's judgment entered on May 17, 2010, convicting him, after a bench trial on stipulated facts (the "Stipulation"), of access device fraud in violation of 18 U.S.C. § 1029(a)(5) and (b)(1) (Count One); aggravated identity theft in violation of 18 U.S.C. § 1028A (Count Two); and possession of fifteen or more counterfeit and unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) (Count Four).  On appeal, Henderson challenges the district court's denial of his suppression motion, which sought suppression of items seized from his vehicle and person on April 22, 2009, when he was arrested.  He also argues that the evidence was insufficient to convict him of aggravated identity theft and access device fraud. Although we assume the parties' familiarity with the underlying facts and procedural history in this case, we discuss those facts that are pertinent to our decision.

Henderson contends that because he had been removed from his car following his arrest, he was not within reaching distance of the passenger compartment, and therefore the search of the car incident to his arrest violated his Fourth Amendment Rights.  He further claims that there was no reasonable basis for the police to conclude that his car would contain evidence of the identity theft offense for which he was arrested, which had taken place eighteen months previously.  Henderson also asserts that the inventory search of his car was improper for a number of reasons, including the fact that the police did not impound the car, it was parked on the street, and it did not require towing.

-2-

We review the district court's ruling on a suppression motion for "clear error as to the district court's factual findings, viewing the evidence in the light most favorable to the government, and *de novo* as to questions of law." *United States v. Rodriguez*, 356 F.3d 254, 257 (2d Cir. 2004). Inventory searches and searches incident to a lawful arrest are settled exceptions to the Fourth Amendment's search warrant requirement. *See, e.g., Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 1723 (2009)*; Whren v. United States,* 517 U.S. 806, 811-12 (1996).

With regard to a search of a car incident to a lawful arrest, the Supreme Court has held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S. Ct. at 1723 (emphasis added). At the suppression hearing, the district court credited the testimony of the lead detective, Detective Keane, who testified that identity theft offenses inherently involve mobility in a car, since perpetrators have to travel to different stores in order to use counterfeit credit cards.

The court concluded that although the police might not find documents used in the specific identity theft for which the person was arrested, particularly if that offense took place months ago, the search was still lawful because "identity theft by its very nature is something that's going to require proof of intent, proof of pattern, proof of [Fed. R. Evid. 404(b)]-type evidence," which "one could expect to find reasonably in those circumstances." Accordingly, the district court ruled that Detective Keane had a reasonable basis to believe that Henderson's wallet and vehicle would yield evidence of the offense for which he was being arrested. Under

*Gant*, that is all that is required for a search incident to a lawful arrest, and the district court did not err in denying the motion to suppress on that ground.

Henderson's suppression challenge based on the inventory search of his vehicle fares no better. Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). We accord "deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody." *Id.* Where officers have a right to impound a car, it does not matter whether the inventory search takes place on the street or at the police station. *See United States v. Little*, 945 F. Supp. 79, 84 (S.D.N.Y. 1996); *accord United States v. Hall*, 497 F.3d 846, 851-52 (8th Cir. 2007).

The district court properly upheld the search of Henderson's vehicle as an inventory search, in light of the evidence introduced at the suppression hearing. After Henderson was placed under arrest, Detective Keane, who had been investigating the case, retrieved Henderson's wallet from the car, stating that he was "responsible for the prisoner and all of his property during an arrest." While in the car, he observed papers, cellphones, credit cards, and gift cards and also recovered numerous items from the trunk. Detective Keane inventoried and vouchered these items. Following this search, Detective Keane and his partner discussed impounding the vehicle to safeguard it, but Henderson requested instead that the vehicle be left so that his sister could pick it up. Detective Keane parked the car on the street, locked it, and later gave the keys to Henderson's sister.

The facts here, credited by the district court, demonstrate that Detective Keane properly acted to safeguard the car and eliminate the possibility of a later claim of lost property or damages, particularly under the circumstances where the police had intended to impound the vehicle but left it on the street, acceding to Henderson's request that another person retrieve the car. Henderson's many arguments on appeal that the inventory search was unlawful are without merit as they either depend on immaterial or unsupportable facts or a misunderstanding of the law. Henderson offers a related argument that because the items mentioned in the criminal complaint were unconstitutionally seized from his vehicle, the remaining allegations in the complaint were insufficient to establish probable cause for his arrest and therefore certain items seized from his person should have been suppressed. This contention fails, given that there were no Fourth Amendment infirmities in the searches.

Henderson next challenges the sufficiency of the evidence. He first asserts that the Stipulation does not state expressly that, during the course of committing the Access Device Fraud offense (charged in Count 1), he used a means of identification which he knew belonged to actual (as opposed to fictitious) persons, which would support a guilty verdict for Aggravated Identity Theft[1] (charged in Count 2). He cites *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009), in which the Supreme Court held that to prove Aggravated Identity Theft, the government had to show "that the defendant knew that the means of identification at issue belonged to another person." *Id.* at 1894.

---

[1] The crime of Aggravated Identity Theft covers "[w]hoever, during and in relation to any felony violation [including Access Device Fraud] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" and provides that, in addition to the punishment provided for such felony, the individual shall "be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1).

We review *de novo* a challenge to the sufficiency of the evidence. *United States v. Yannotti*, 541 F.3d 112, 120 (2d Cir. 2008). "A defendant challenging his conviction on [this] basis bears a heavy burden. Evidentiary rulings are reviewed for abuse of discretion. A district court's factual findings are reviewed for clear error." *Id.* (internal quotation marks and citations omitted). We thus credit "'every inference that the [factfinder] might have drawn in favor of the government, and we may overturn the conviction only if no rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.'" *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998) (quoting *United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996)).

The language of the Stipulation–-which the district court stated "appear[ed] to be a stipulation to each and every element of each of the four counts of the indictment"—undercuts Henderson's sufficiency argument. For example, paragraph 19 of the Stipulation provides that he "knowingly and without lawful authority possessed and used means of identification[ ] of other persons during and in relation to an offense of access device fraud, specifically the defendant's fraudulent use of the Marcis Account and the Lewis Account as described in paragraphs 8 and 9." Paragraph 1(d) refers to a Mastercard bearing the number of a "Chase Bank credit card account number held by a person named [Redacted] Lewis," showing that the Lewis Account belonged to a real person. Similarly, paragraph 1(f) refers to gift cards purchased with a Chase Bank credit card "held by a person named [Redacted] Marcis," showing that the Marcis Account belonged to a real person. The district court found that paragraph 19 supported Henderson's conviction for Aggravated Identity Theft beyond a reasonable doubt.

The evidence amply supported the finding that Henderson used access devices of real persons, and that he did so knowingly, as the Stipulation expressly included the word "knowingly."

Henderson's next contends that, in order to have been found guilty of Access Device Fraud[2], the Stipulation had to demonstrate that he actually knew the access devices that he used to commit the offense belonged to another person. He asserts the Stipulation did not so provide. Given the text of the Stipulation, this argument is similarly unpersuasive. Henderson stipulated that he possessed "Social Security numbers, credit card account numbers, savings account numbers, checking account numbers, dates of birth, telephone numbers and names" that were "'means of identification,' as defined by 18 U.S.C. § 1028(d)(7), of other people." He stipulated that he used a counterfeit MasterCard bearing his name and an embossed account number to commit Access Device Fraud and that he "knowingly, willfully and with intent to defraud" effected numerous transactions using credit cards accounts of actual people to obtain things of value. Henderson further stipulated that the credit card numbers were access devices as defined in the statute, that were issued to persons other than him, and certain of the credit cards and gift cards were "counterfeit access devices" as defined in the statute. All of these stipulated facts, plus the reasonable inferences the district court drew from these facts, sufficed to establish Henderson's guilt for Access Device Fraud.

Finally, Henderson argues that the Stipulation does not support his conviction for Aggravated Identity Theft because that offense requires use of both an access device needed to

---

[2] The crime of Access Device Fraud covers "[w]hoever . . .knowingly and with intent to defraud effects transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal to or greater than $1,000[ ] . . . if the offense affects interstate or foreign commerce." 18 U.S.C. § 1029(a)(5).

satisfy Access Device Fraud under § 1025(a)(5) and an additional "means of identification" of another person. *See* 18 U.S.C. § 1028(d)(7) (defining the term "means of identification" to include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual"). Henderson argues that the access device used to establish the offense of Access Device Fraud cannot also be used to establish the "means of identification" of Aggravated Identity Theft. Assuming without deciding that Henderson is correct in his contention that the "means of identification" must be separate and in addition to an access device, the Stipulation nonetheless supports his conviction. Paragraph 1(d) of the Stipulation states that Henderson used a counterfeit credit card bearing his name and an encoded account number which belonged to another person named Lewis. The card was an access device. Lewis's account number encoded on the counterfeit credit card was an additional "means of identification" under § 1028(d)(7), which includes as the definition of a "means of identification" any "number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . (C) unique electronic identification number. . . ." The stipulated facts were sufficient to establish all of the elements for Aggravated Identity Theft.

Accordingly, for the reasons stated, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk
