Filed 3/12/25  P. v. Malijan CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082876 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE416970) |
| JACKLYN MALIJAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frank L. Birchak and John M. Thompson, Judges.  Affirmed as modified.

Belinda Escobosa, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Jacklyn Malijan was a passenger in a car that was stopped at night for a minor traffic infraction. Based on several factors, the sheriff's deputies conducting the stop believed their safety was at risk because one or more of the car's occupants might be armed. After removing the occupants from the vehicle, a search of Malijan's backpack in the rear of the passenger compartment yielded a loaded handgun. She was convicted of unlawfully possessing a firearm (Pen. Code, § 29800, subd. (a)(1))[1] and granted probation.

Malijan's appeal primarily challenges the search of her backpack as a violation of the Fourth Amendment. But under settled Fourth Amendment law, where officers conducting a traffic stop have a reasonable belief that suspects in the vehicle may be dangerous and could gain access to any weapons located inside the car, the rationale for a *Terry* "stop and frisk"[2] extends to permit a warrantless protective search of areas within the passenger compartment of the automobile in which a weapon might be located. (*Michigan v. Long* (1983) 463 U.S. 1032, 1035, 1051 (*Long*).) Finding this legal principle applicable here to justify the search of the backpack, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 4:00 on a March morning in 2023, a sheriff's deputy driving on a two-lane road in Spring Valley was behind a white Dodge vehicle that was weaving in and out of its lane, crossing both onto the shoulder and into the lane for oncoming traffic. As he followed the car for approximately one mile, the deputy noticed the two rear seat passengers looking back at

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] See *Terry v. Ohio* (1968) 392 U.S. 1, 12 (*Terry*).

2

him, and they appeared to be passing items to each other.  He initiated a traffic stop.  The driver of the Dodge stopped, but as the deputy started to get out of his patrol car, the Dodge pulled forward a short distance into a dirt alleyway that was not well lit.  There was very little traffic at that time of night.

Understanding that cover officers were en route, the deputy approached the white car and observed four occupants—a driver and front-seat passenger, both females, and two passengers in the rear seat, including Malijan on the right and a male on the left.  As he began talking with the driver, informing her of the reason for the stop, the deputy noticed that the male passenger was breathing heavily, was avoiding eye contact, and appeared to be nervous.  The placement of his hands in his lap obscured his waistband from the deputy.

While the deputy was waiting for backup officers, he asked the occupants of the car for identification and ran a records check.  He learned that the driver was driving on a suspended license, and was previously cited for a similar violation.  The male in the rear seat had an arrest two years earlier for carrying a concealed dirk or dagger.  And Malijan had a prior felony conviction from 2014.

Because the driver had a pattern of driving on a suspended license, the deputy thought it would be necessary to arrest her and impound the vehicle instead of letting her go with a citation.  At the same time, based on the "totality of the circumstances," he also believed there was "a high likelihood that there was a dangerous weapon or firearm in the vehicle."  For his safety, he decided to wait for cover officers to arrive before proceeding.

When additional deputies arrived, about 20 minutes after the initial stop, they removed the four occupants from the car and placed them in

handcuffs.  The driver was under arrest for driving on a suspended license; the others were merely detained.  Ultimately, the deputy searched the passenger compartment of the vehicle.[3]  Inside a backpack on the right rear seat he located a loaded, unserialized nine millimeter handgun.  He then arrested Malijan for possession of a concealed firearm.

Malijan was ultimately charged with unlawfully possessing a firearm (§ 29800, subd. (a)(1)) and  ammunition (§ 30305, subd. (a)(1)).  In conjunction with her preliminary hearing, she made a motion to suppress evidence pursuant to section 1538.5, arguing that the warrantless search of her backpack violated her rights under the Fourth Amendment.

The magistrate denied the motion.  He first found that the initial stop was valid and was not unreasonably delayed or unnecessarily prolonged. It was reasonable, in the court's view, for the deputy to await the arrival of cover officers before removing the occupants from the car so he could secure the scene and address the Vehicle Code violations that prompted the stop.

At the same time, the court rejected the prosecution's proffered justifications for the search of Malijan's backpack.  It found there was no proper basis to conduct an inventory search in advance of impounding the vehicle.  It likewise dismissed the prosecutor's reliance on *Long*, *supra*, 463 U.S. 1032, believing that case only permitted an external patdown of a container located in a vehicle.  Because there was "no external pat-down" in this case, the magistrate decided *Long* did not apply.

Despite these findings, the court nonetheless concluded that the search was valid.  It confronted what it called a "straightforward probable cause determination" as to whether the deputy had "probable cause . . . to believe

---

[3]     The record is not completely clear whether the deputies first conducted a patdown of the occupants before searching the vehicle.

evidence of a crime would be found in the backpack?" Based on the location and time of day of the traffic stop, the observed passing of objects by the rear seat passengers before the stop, and the background and behavior of the male passenger, the magistrate concluded the probable cause standard was satisfied.

A jury later convicted Malijan on both counts. The court suspended imposition of sentence, placing her on formal probation for two years with various terms and conditions.

## DISCUSSION

Malijan challenges the denial of her motion to suppress evidence seized following the search of her backpack. She also contends the trial court improperly imposed certain probation conditions.

### A.     *The Motion to Suppress Evidence*

As a preliminary matter, the People contend Malijan forfeited her Fourth Amendment claim by failing to renew her suppression motion or otherwise raise the issue in the superior court following the preliminary hearing. (See generally *People v. Lilienthal* (1978) 22 Cal.3d 891, 896–897.) Malijan responds that if the claim was forfeited, her counsel rendered ineffective assistance. To forestall such an assertion, we elect to address the merits of her argument.[4]

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. Warrantless searches are presumptively unreasonable, and the burden is on the prosecution to

---

[4]     Malijan also filed a related petition for writ of habeas corpus (*In re Jacklynn Lee Malijan*, D084112) claiming ineffective assistance of counsel. The petition was ordered to be considered with this appeal. We deny the petition by separate order.

establish an applicable exception to the warrant requirement. (*People v. Simon* (2016) 1 Cal.5th 98, 120.) On appeal, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) A legally correct decision will not be reversed merely because the court articulated the wrong reason for its conclusion. (*People v. Brown* (2004) 33 Cal.4th 892, 901; see also *People v. Hochstraser* (2009) 178 Cal.App.4th 883, 894 [applying principle to suppression motion].)

Although the reasonableness of a search or seizure is normally tested by the probable cause standard expressly referenced in the Fourth Amendment, it is well established that circumstances short of probable cause may authorize a law enforcement officer to briefly detain an individual to confirm or dispel suspicions that the person is engaged in criminal activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 892 (*Tony C.*); *Terry, supra,* 392 U.S. at p. 30.) Such a limited detention is proper when the officer knows of "specific and articulable facts causing him [or her] to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*Tony C.*, at p. 893.) In making this decision, officers are entitled to rely on their unique training and experience. (*Ibid.*)

An individual is properly detained for a period of time "reasonably necessary" to conduct the investigation and discharge the duties associated with the reason for the detention. (*People v. McGaughran* (1979) 25 Cal.3d 577, 584; see also *Rodriguez v. United States* (2015) 575 U.S. 348, 350.) Officers may also conduct a limited search for weapons if "a reasonably

prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry*, *supra*, 392 U.S. at p. 27.) The scope of this protective search is "confined . . . to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (*Id.* at p. 29.)

In *Long, supra,* 463 U.S. 1032, the United States Supreme Court applied the *Terry* principles authorizing temporary detentions to a traffic stop and search of a vehicle. Officers in that case observed a car speeding and driving erratically before it swerved off the road and into a ditch. (*Long*, at p. 1035.) When they contacted the driver outside the vehicle, he appeared to them " 'to be under the influence of something.' " (*Id.* at p. 1036.) A patdown search revealed no weapons.

The officers looked through an open door of the car and saw a large hunting knife. (*Long*, *supra*, 463 U.S. at p. 1036.) One of the officers shined his flashlight into the car's interior and observed something protruding "from under the armrest on the front seat." (*Ibid.*) Lifting the armrest, he discovered a pouch that appeared to contain marijuana. (*Ibid.*)

The Supreme Court granted certiorari "to consider the important question of the authority of a police officer to protect himself by conducting a *Terry*-type search of the passenger compartment of a motor vehicle during the lawful investigatory stop of the occupant of the vehicle." (*Long*, *supra*, 463 U.S. at p. 1037.) The Michigan Supreme Court had held that *Terry* principles did not validate the search because " '*Terry* authorized only a limited pat-down search of a *person* suspected of criminal activity' rather than a search of an area." (*Long*, at p. 1045, quoting *People v. Long* (1982) 413 Mich. 461, 472.) Disagreeing with this conclusion, the Supreme Court explained that "the search of the passenger compartment of an automobile,

7

limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (*Long*, *supra*, 463 U.S. at p. 1049.) Because the pouch in the defendant's vehicle "could have contained a weapon" (*id.* at p. 1051), it was included within the permissible scope of the search.

1. *The traffic stop was not unduly prolonged; any delay waiting for additional deputies was justified by a reasonable concern for officer safety.*

Malijan does not challenge the validity of the initial traffic stop. Rather, she contends that the traffic stop was "unduly prolonged" so that the deputy could investigate his suspicion that there might be a weapon inside the car. The magistrate saw it differently. He determined that before deputies processed the traffic stop, they were entitled to ensure their own safety by conducting a protective search for weapons. The search was justified by the deputies' reasonable fear for their safety based on a combination of factors including: (1) the time of day (4:00 a.m.) (see *People v. Mendoza* (2011) 52 Cal.4th 1056, 1082); (2) the poorly lit location where the driver stopped the vehicle; (3) the first deputy's observations that the backseat passengers appeared to be passing something (and perhaps secreting it) just prior to the stop; (4) the nervousness of the male backseat passenger (see *United States v. Maldonado* (5th Cir. 1995) 42 F.3d 906, 908; *United States v. Little* (S.D.N.Y. 1996) 945 F.Supp. 79, 83, *affd.* (2d Cir. 1998) 133 F.3d 908); and (5) the fact that he had a prior arrest for carrying a concealed weapon.

8

We agree with the trial court. *Terry* establishes that where the proper performance of law enforcement officers' duties places them in close proximity to individuals who are the subject of an investigation or inquiry, the officers may sometimes be justified in conducting a protective search for weapons. Such a search, limited in scope, is permissible only if the officers possess "specific and articulable facts" giving rise to a reasonable belief that weapons may be present. (*Tony C., supra,* 21 Cal.3d 888; *Arizona v. Johnson* (2009) 555 U.S. 323, 327.)

Here, the facts as found by the magistrate support his conclusion that the deputy who initiated the traffic stop reasonably feared for his safety. Although one or two of the factors, standing alone, might not have been adequate, the combination of five circumstances was more than sufficient. On the basis of this reasonable concern, the deputy was justified in waiting for backup officers to arrive before asking the vehicle occupants to get out of the car. The traffic stop was not extended beyond the time reasonably necessary for these cover officers to arrive. As soon as they did, the occupants were removed from the car.

2. *The scope of the protective search—including the interior of the backpack—did not exceed constitutional limits.*

If the deputies conducted a patdown of the vehicle occupants in this case (*ante,* fn. 3), it yielded no weapons. The more significant question is whether the deputies were permitted to go beyond the typical "frisk" of the person and look inside the passenger compartment of the car, to include containers like Malijan's backpack that might contain a weapon. The prosecution suggested two different bases to validate the search of the backpack based on (1) the deputy's decision to impound the car after he discovered that the driver was operating the vehicle with a suspended license, and (2) the Supreme Court's decision in *Long, supra,* 463 U.S. 1032.

9

The magistrate rejected both of these theories, but independently relied on a third approach to reach the same conclusion.

We agree that the search of the backpack cannot be justified based on any need to impound the vehicle and inventory its contents. It is well settled that before officers decide to impound a vehicle pursuant to their community caretaking function because the driver is unable to operate it, they must first identify some reason why the car cannot be secured and left in its present location. And even if it must be moved, they are required to explore whether it could be driven away by someone other than present driver. (*People v. Lee* (2019) 40 Cal.App.5th 853, 868 (*Lee*); *People v. Torres* (2010) 188 Cal.App.4th 775, 790.) Here, there was no evidence that the deputies made either inquiry.

The magistrate ultimately concluded that the search of the backpack was authorized by the automobile exception to the warrant requirement on the basis that the deputies had probable cause to believe evidence of a crime would be found inside. (See generally *People v. Evans* (2011) 200 Cal.App.4th 735, 753.) As we have explained, "[p]robable cause is a more demanding standard than mere reasonable suspicion." (*Lee*, *supra*, 40 Cal.App.5th at p. 862.) It requires that officers be aware of facts causing them to entertain a strong suspicion that evidence of a crime is located in the particular place to be searched. (*Wimberly v. Superior Court of San Bernardino County* (1976) 16 Cal.3d 557, 571.) We question whether the facts in this case rise to that level. (*Evans*, at pp. 753–755.)

But even if the information known to the deputies did not amount to *probable cause*, the court had already properly found that they had a *reasonable suspicion* some kind of weapon might be located inside the vehicle. As we have explained, the Supreme Court's *Long* decision indicates that

10

officers making a traffic stop may conduct a warrantless search of the interior of a vehicle for weapons they reasonably believe may be secreted there. (See *People v. Molina* (1994) 25 Cal.App.4th 1038, 1042 ["Once the officers . . . had reason to believe that their safety was in danger . . . , [they] were entitled to search the [passenger] compartment and any containers therein for weapons."]; Caskey, Cal. Search & Seizure (2024) § 4:29 ["If the officer reasonably suspects the individual being detained may be armed, the court will uphold the protective search of the individual, the passenger compartment, and any containers that could hold a weapon."]; see also *United States v. Holifield* (7th Cir. 1992) 956 F.2d 665, 668 [after initial patdown of driver and two passengers revealed no weapons, officers could still search locked glove compartment]; *United States v. Paulino* (6th Cir. 1991) 935 F.2d 739, 745 [officers could search cooler found in back seat of vehicle].)

The magistrate found *Long* inapplicable to these facts because he believed it only authorized an external patdown of any containers located inside the car. This is an unduly restrictive reading of *Long*.[5] *Long* itself involved a pouch—albeit an open one—and there is no mention of an external patdown. Rather, Justice O'Connor's opinion sought to craft an easily applied rule to protect officer safety. It permits "the search of the passenger compartment of an automobile" if the officer reasonably believes "the suspect is dangerous and . . . may gain immediate control of weapons." (463 U.S. at

---

5    Significantly, Malijan does not adopt the magistrate's reasoning that "since there was no external pat-down of the backpack, the analysis of *Long* is inapplicable." Her central contention is that the facts known to the deputies did not give rise to a reasonable suspicion the occupants of the vehicle were dangerous.

11

p. 1049.)  The scope of the protective search is simply "limited to those areas in which a weapon *may* be placed or hidden."  (*Ibid.*, italics added.)

In this case, there is no question that Malijan's backpack *could* contain a weapon because it *did*.  And there is no evidence to suggest that an external patdown of the backpack would have revealed the firearm.  Moreover, the risk to officer safety, on which the *Long* rule is predicated, is that a detained individual will return to the vehicle and retrieve a weapon.  (*Long*, *supra*, 463 U.S. at pp. 1051–1052.)  This risk is no less if the weapon is located *inside* a container than if it is elsewhere concealed in the vehicle's passenger compartment.

In sum, based on their reasonable safety concerns as found by the magistrate, the deputies in this case were authorized by *Long* to search the passenger compartment of the automobile, including any containers inside that could conceal a weapon.  Because Malijan's backpack was one such container, the deputies did not violate her Fourth Amendment rights by opening and searching it.  Her motion to suppress was properly denied.

## B.    *Probation Conditions*

Following the jury verdict, the People argued that Malijan should be sentenced to state prison.  Rejecting this suggestion, the trial court suspended imposition of sentence and placed Malijan on probation. The terms and conditions of probation included that Malijan serve 120 days in local custody, that she submit to warrantless searches of her person, vehicle, residence, and electronic devices (Condition 6n), and that she obtain the approval of her probation officer as to where she resided and worked (Condition 10g).  She raised no objection to either condition at the sentencing hearing.

12

Relying on *People v. Lent* (1975) 15 Cal.3d 481, Malijan argues that there is no reasonable relationship between Condition 6n—to the extent it allows warrantless search of her electronics—or Condition 10g and the crime of which she was found guilty. She also maintains that the two conditions restrict conduct not itself criminal, do not reasonably concern future criminality, and are otherwise overbroad.[6] (*Lent*, p. 486; *In re Sheena K.* (2007) 40 Cal.4th 875, 890.) The People contend that both contentions are as-applied challenges forfeited on appeal because Malijan failed to object in the trial court. (See generally *People v. Patton* (2019) 41 Cal.App.5th 934, 947 (*Patton*).) In response, she asserts that, if otherwise forfeited, her trial counsel rendered ineffective assistance.

We agree with the People that both of Malijan's contentions represent as-applied challenges to probation conditions. She is not arguing that a court can *never* impose an electronic search condition or a condition requiring probation officer approval of a defendant's residence and place of employment. Rather, she suggests that the "individual facts and circumstances" of the case and the "particular sentencing record developed below" do not justify either condition. (See *Patton*, *supra*, 41 Cal.App.5th at p. 946.) As we explained in *Patton*, "[t]his is a classic as-applied claim." (*Id.* at p. 947.) Accordingly, her claims were subject to forfeiture.

We are only partially persuaded by Malijan's fallback argument that her trial counsel rendered ineffective assistance by failing to object to the conditions at sentencing. As to Condition 6n, the electronic search condition, the People concede that it bears no reasonable relationship to her crime or

---

[6]     Malijan never explains how her overbreadth challenge differs from her assertion that the probation conditions do not satisfy *Lent*'s reasonable relationship requirement.

her future criminality.  Under these circumstances, they appear to agree that no reasonable attorney could have failed to raise an objection and there could be no valid tactical basis for doing so.  (See *People v. Mai* (2013) 57 Cal.4th 986, 1009.)  Accordingly, we will order that it be modified to remove reference to electronic devices.

The same cannot be said of Condition 10g.  Whether it is reasonable to require probation department approval for Malijan's choice of a job or residence is a highly fact-specific inquiry dependent on all the circumstances of the case.  Not knowing all those facts and circumstances, we can hardly conclude that no reasonable lawyer would have declined to object to the condition at sentencing.  The contention is therefore forfeited.

## DISPOSITION

The order granting probation is modified to delete "computers and recordable media" from Condition 6n.  As modified, the judgment is affirmed.


DATO, J.


WE CONCUR:



McCONNELL, P. J.



CASTILLO, J.


14